Case number 14-2308 Joseph Boulton v. Christopher Swanson et al. Argument not to exceed 15 minutes per side. And Ms. Cortese for... Good morning, Your Honors. Good morning. May it please the Court, Nanette Cortese appearing on behalf of the appellant, Joseph Boulton. Your Honors, I would like to reserve three minutes for rebuttal. All right. As Your Honors are no doubt aware, this case concerns whether a public employee who has spoken out, including testifying under oath at an arbitration hearing, on issues including training in CPR and tasers, is entitled to protection under the First Amendment from retaliation. Your Honors, the United States Supreme Court recognized in Lane v. Franks that, quote, there is considerable value, moreover, in encouraging rather than inhibiting speech by public employees, for governmental employees are often in the best position to know what ails the agencies for which they work. And that is Lane, 1304, Supreme Court Reporter at 2377. Your Honors, when a higher up in a department, such as under Sheriff Swanson, states that officers are fully up to date on training, such as in tasers, frequently, Your Honors, the only persons who will be in a position to know whether or not those statements and positions by the higher ups and the department are true and accurate will be the public employees who work in those departments. They have unique knowledge that may not be possessed by the members of the general public. And, Your Honors, we submit that if it is found that Joseph Bolton's actions and speech, including testimony under oath at an arbitration hearing, is not protected from retaliation under the First Amendment of the United States Constitution, that this may have a chilling effect on the speech of other public employees. Other public employees, including members of law enforcement, who may find themselves in a position to speak out or even be called upon to offer testimony in a proceeding regarding matters that may affect their department, such as training, or where they may be asked to put themselves in a position where they may speak out or testify contradicting a position held by a higher up in a department. If they believe that such speech is not entitled to protection from retaliation under the First Amendment, if they understand that even if they testify under oath at a proceeding regarding issues of vital interest, such as training, that they may nonetheless be subject to retaliation and even having their employment terminated with impunity, those public employees, those public servants, including members of law enforcement, they may very well find themselves in a position where they think twice, where they think twice to themselves and say, if my undersheriff says that we are trained and I know that I am not and I know that we are not, I'm going to think twice before I say that. I'm going to think twice before I volunteer that in my testimony at a hearing. I'm going to think twice before I speak out on that issue because I may be in fear of losing my job. If the courts tell me that that speech, even after the United States Supreme Court decision in Lane, is not protected from retaliation, then we submit that that may have a chilling effect upon the speech of public employees on matters of vital public concern going forward. If we assume both of those, that it is protected speech on matters of public concern, what is your analysis of the remaining parts of the test, the shift of the burden to the employer to demonstrate that this was, actually that this employment decision would have been made absent the protected conduct? What's your best argument for why it would not have been made absent protected conduct? Certainly, Your Honor. My response to that is twofold. Number one, the opinion and order by the district court that is the subject of this morning's appeal decided the issue on the legal basis that Joseph Bolton did not engage in protected conduct. But moving on, Your Honor, to the other aspects of the analysis. As you pointed out, Your Honor, if once we establish that Joseph Bolton did engage in protected conduct, the burden shifts to the employer to, number one, show that such conduct would have impacted the efficient operation of the department, would have detrimentally affected any efficient operation of the department. That's not been shown in this case. Number two, as you pointed out, Your Honor, the burden would shift to the employer to show that but for the protected conduct, they still, even setting aside the protected conduct, they still would have taken the adverse employment action issue, which in this case was the investigation and disciplining of Sergeant Bolton. And we submit, Your Honor, that we argued in our briefs on appeal and there was ample evidence submitted in the lower court below that, number one, the scope of the investigation conducted against Sergeant Bolton. As pointed out to the lower court below, the department essentially has a practice and policy where if complaints aren't submitted in writing, they're not treated as complaints. Nonetheless, the department took it upon themselves to start an investigation wherein, I believe, 42 people were interviewed in conjunction with their dealings with Sergeant Bolton, where essentially they asked almost everyone who had contact with him to try to come forward with information against him. The scope of the investigation, which, as we argue in the court below and as we established in the record, was unprecedented, Your Honor. From that, a reasonable jury could infer that, in fact, the department was on a witch hunt. We also came forward with evidence, Your Honor, that other similarly situated employees who had engaged in similar if not worse conduct had not been disciplined. What's your best analogy? Our best analogy... Another employee whose conduct was the same, shall we say, level of egregiousness as your client? I believe probably our best analogy, Your Honor, would be, as we discussed to the court below and as I believe Sergeant Bolton had reported and complained of, I believe it was a lieutenant in engagement with, I believe, Sergeant Bolton, who had shaken a soda bottle and placed it by his groin and then made gestures, etc. It was a fairly sexually harassing-oriented behavior directed to Sergeant Bolton. This was probably one of the more egregious examples that comes to my mind as we sit here this morning, Your Honor, but certainly... You would say that's on a level with what the claim is of sexually harassing inmates and females? Yes, Your Honor, I would say that was... Officers and inmates? Yes, I would say that was on a level and, in fact, not only would I say that was on a similar level, Your Honor, I would say that that was, in fact, probably far more egregious conduct. For example, there was the one officer who, back in March, I believe, had made some complaints regarding Sergeant Bolton. As we pointed out in our brief on appeal and as was argued in the court below, it was extremely interesting that this officer's complaints, which were initially brought in March, were not, in fact, investigated and truly the investigation initiated until after Sergeant Bolton testified at the arbitration. So we submit, Your Honor, that there was, in fact, ample evidence submitted to the court below and ample evidence cited to the court in our briefs on appeal regarding... or comparable misconduct of someone who had defied an employer's order regarding speaking to people about a pending investigation. I'm not sure, Your Honor, that, at least from the record that we have developed below and the arguments that were made below, I'm not sure that other than the one case that actually made its way to the Sixth Circuit in 2010 that was decided, Cherry v. Pickerel, that was discussed in the briefing, I'm not aware, Your Honor, nor do I believe it was developed in the record below, if there were any other employees in the past who have been disciplined or reprimanded for speaking out against the Department or against whom that general order prohibiting criticism of the Department where that general order was applied to discipline an employee. Would you say that disciplining an employee for engaging in discussions with witnesses of an investigation and then lying to the employer about that is related to punishment under the criticism policy? Your Honor, I do note that I'm out of time, but I did wish to address the court's question. Again, as I believe as we developed in our brief on appeal and in the record below, Sergeant Bolton denied that he lied regarding speaking to people regarding the investigation. He explained, and it was developed in the court below, what the nature of his context was with the witnesses, that he did not speak to witnesses regarding the investigation, do in any way influence or hamper the investigation, and it was his position that he did not, in fact, lie. And in conclusion, and I will address in rebuttal, and thank you, Your Honors. Thank you. May it please the Court, Mary Masserant on behalf of Genesee County. The focus this morning has been properly so on the first issue and not on the denial of leave to file a third amended complaint, so I will likewise address my arguments to that issue. Because the only complaint here is a complaint against the county, the district court properly granted summary judgment in favor of the county because there is nothing in the record which shows that there is a policy of the county that was a moving force behind a violation of Bolton's First Amendment free speech rights. Bolton tries to point to the general order policy. The policy has been upheld by this court, albeit in an unpublished opinion, in a general way as an appropriate policy for a police department, sheriff's department, department like that to have. And so the real question comes to the facts of this case and is there something wrong with how the policy was applied here. Clearly there's no bar to an as applied. Correct. And it's our position in this case that the policy was properly used in order to discipline someone who had engaged in a pattern of egregious conduct. And let me focus first on this causal connection, the pretext part of the analysis, and then go back to Lane. I think that the district court certainly predicated its ruling in part on the Garcetti analysis, but also said regardless of that there isn't any causal connection between this discipline and the claimed protected speech. And so if the court... You don't dispute that this is protected speech? I would... I'm sorry, could you... You don't dispute that a prima facie case was made? No, I do dispute that. I think probably... Not protected. Not protected First Amendment speech. I would contend that the speech that was made as a union steward in the course of defending union members in an Act 312 arbitration is distinguishable from Lane and is not protected speech. Even though it is speech on clearly matters of public concern, whether police officers are appropriately trained in the use of tasers, how can that not be a matter of public concern? This court and other courts have held repeatedly that workplace grievances that relate to matters like training, staffing, and other matters, which may be viewed as having an impact on public services, are nevertheless in the First Amendment arena not protected speech. I think that... The Supreme Court came out in Lane v. Franks in 2014 and said we do not read that expansively. I agree with that. I think Lane did certainly narrow Garcetti, and we talked about that in our reply brief. But I also believe that... Or in our brief, excuse me. I also believe that while Lane narrowed Garcetti, the facts of this case, because they arise in the context of a union grievance... So any time an employee, a public employee, speaks in a union grievance, it cannot be protected speech? I'm not urging the court to adopt a categorical rule like that, though I think there is an argument to be made in support of that based on the past precedent. But I certainly think Lane is a different kind of case qualitatively. And the facts of this case, because they do arise in this context, where the courts have recognized employee grievances and disputes that are economic in nature. And this hearing was an Arbitration Act 312 arbitration hearing clearly relating to economic issues in the labor context. And wasn't the testimony in this, Mr. Bolton's testimony, at odds with the union position and his own economic interests? The district court made a... And I'm not trying to quibble. I would say no and yes. And let me explain that. The district court properly said, I've looked at the testimony that's in this record. It doesn't show Bolton in testimony disagreeing. And testimony, I would submit, is the closest case when you're getting into whether the speech is protected. Bolton also said he made these kinds of statements elsewhere, and he certainly testifies that he made these statements disagreeing with Swanson in other contexts, and Swanson agrees. Yes, I understand he doesn't agree with my view. That's clear. I believe that Garcetti would have definitely applied. Lane has cut back, and now we have a new case that is somewhere between Garcetti and Lane, and our position would be it's more on the Garcetti side. But in terms of resolving this case, probably the easier way for the court to resolve it is simply to go to the other part of the analysis, which is to say here we have an employee who received discipline for inappropriate conduct and belittling, harassing kinds of statements toward female deputies that was not severe, continued in a pattern of engaging in this conduct as well as engaging in what seemed to me to be quite egregious conduct toward female prisoners in the jail, and... Let's assume that you're correct, that this was egregious and wholly inappropriate treatment of women. Does it not matter that there was no official complaint of that pending? How do you respond to the claim that it was retaliatory because they went out and interviewed 42 people and said, okay, bring us your complaints? And then you bring something, it's a pretty good complaint, but it was solicited? It was very clear that there was an incident, there was some kind of discipline not real severe, another incident, and when an additional incident, I believe it was the third, it might have been the second, came up after Bolton had been told this isn't appropriate, you can't do this, then they said, look, you've continued, now we're going to have to look more broadly because this shows a pattern, it's more serious. And I think it's really important when you think about the facts of this case in the county, and you can see this in the record, there's a discussion at a meeting that Swanson has with a number of people saying, look, we as a department are being subjected to criticism and suits because of the inappropriate conduct of some of those who work in our department. This is not going to be tolerated. So it's in that context when they've given a warning. Remind me when that meeting was held relative to, do you know? I'm not sure I could find it. Go ahead with your argument. But there's a verbatim kind of transcript of the discussion of Swanson and Piquel with a number of people in their office, and it's one of the exhibits at the summary disposition motion. That has the date of the meeting? I think so. I believe so. In that context, they say to Bolton, now you've done it again, we're going to have to investigate. There's nothing to connect this in any way with his later claim that, oh, you're coming after me for speech. And even the timing is remote in terms of this. He's disciplined. He persists. So then they say, okay, now we have to look at this. When they look, they discover all sorts of things that are very egregious. But not only that, and I think this is also key, he is specifically told, do not talk to the people who are being questioned. If you do, that is going to be perceived as an effort to intimidate them and to interfere. He was given that specific warning. And despite that, he did. And then he lied about it repeatedly until he was told, well, so-and-so said you talk to him three times. And then he backtracked. And to be sure, he tried to give an explanation about his motive being fine and good. But that behavior, particularly in a law enforcement agency, is very serious. And there's no example of anyone who engaged in that kind of behavior when they were the subject of investigation and that conduct being tolerated. I think... The instance that your opposing counsel referenced, was that among fellow officers of comparable rank? They were not of comparable rank. One was a lieutenant, one was a sergeant. So in that sense, you're dealing with a superior subordinate. But it was one instance. So I would analogize it to the conduct, the initial conduct with Bolton where they said, no, don't do this. And it's really not comparable to the record with respect to Bolton. And the notice of discipline that recounts everything that Bolton did and all of the people who spoke about his behavior is an incredibly detailed record of misconduct. So for a county to retain someone like that and allow them to continue to exercise police powers is a very dangerous thing. The notice said, you are engaging in behavior that is subjecting us to the possibility of lawsuits on the basis of civil rights, on the basis of harassment. And we cannot tolerate that. The discipline that was then measured out was a 10-day suspension and a demotion, which in many ways I think one might say is kind, given that conduct. That's why you think that here, this is the only defendant in the county, correct? Give an overview of why you think Monell liability just does not exist in this case. Monell liability doesn't exist in this case because there must be a showing that an unconstitutional policy was the moving force behind the adverse action. And in this case, the adverse action, all of the evidence shows that what caused the adverse action had nothing to do with the protected speech and everything to do with a string of very serious misconduct directed at subordinates, directed at jail inmates, and directed at interfering with and potentially obstructing an investigation of that very conduct, all of which would make it appropriate to remove somebody's ability to serve as a law enforcement officer in what is a very vital position in dealing with the public. And on that basis, I would contend that it's not a Monell violation. Let me just look at my notes. I think it's important here also, there's no evidence that connects any retaliation based on the claimed protected speech, even if the court finds that speech to be protected. The plaintiff says there was temporal proximity, but the hearing took place in April. These incidents had started to be investigated before the hearing. They continued. The investigations therefore widened over a course of months, and it wasn't until July that a broader investigation was pursued, which was really months later, and in September that the results of that investigation resulted in the adverse actions. So it's not a case where it's temporal proximity. And certainly in FERR, which is cited in the briefs in a number of cases, the court has even said mere temporal proximity is not sufficient, except in the rare case. Pardon me? There's some law that there are rare cases in which temporal proximity is sufficient. Don't you agree? I think it's temporal proximity coupled with other evidence that makes clear that that was the reason. And in this case, we don't have a close temporal proximity, and all of the evidence paints a very different picture. And on this record, I think the district court properly granted summary judgment, and I would urge the court to affirm. Thank you. Thank you, Your Honors. Two arguments were made by Genesee County. First of all, with respect to the claim that there was a lack of evidence that the discipline meted out to Sergeant Bolton was based in whole or in part upon his protected speech. In fact, Your Honors, and we repeatedly cite this to the lower court, we cited it to this court. The defendant, Genesee County, in their own words, in response to answers to interrogatories, where they were asked to outline every reason for the adverse employment action, the discipline and double demotion of Sergeant Bolton, they state, and I quote, and also criticism of the office of the Genesee County Sheriff. So by their own admission, at least one aspect, one motivating factor of the discipline, was the criticism of the office of Sheriff by Sergeant Bolton. And a reasonable jury can find that the criticism they're referring to was his testimony in the arbitration hearing and his testimony and speech critical of the department. Your Honor, with regards to going back to your question, Your Honor, with regards to the second aspect of the case, whether they would have undertaken the same action in the absence of Sergeant Bolton's conduct. I do want to go back and talk a little bit more in the time I have left about some of the other comparable incidents of far more egregious conduct that was not subject to similar discipline. And this was argued to the court below and it was argued in our brief. I spoke earlier regarding Lieutenant Matthew Rule. In pleadings submitted to the lower court at docket number 37, page ID 982 of the record below, we talk about Lieutenant Matthew Rule. We state, recently, Defendant Genesee County settled a case filed by Deputy Stacy Kearns in which Ms. Kearns alleged that Lieutenant Rule approached her in court, cursed at her, pulled on her ponytail, and assaulted her, for which he was only suspended for two days. The incident that I spoke about earlier, Lieutenant Rule had been accused by Joseph Bolton of having taken a soda can, placed it in front of his groin, and sticking his groin in the soda can in front of Joseph Bolton's face, essentially simulating a sexual activity with Sergeant Bolton. Lieutenant Rule received no disciplinary action for these acts. We also discuss, Your Honor, another employee of the department, Michael Chatterson. The department was notified that Sergeant Michael Chatterson, and this again is page ID 983 of the lower court record, that Sergeant Michael Chatterson had shown photographs of a very sexual nature of his body parts to a female co-worker. He was not disciplined. In fact, he was promoted to lieutenant, and the same female co-worker complained again. He also engaged in showing several employees sexually-oriented DVDs. So, Your Honors— We should begin to wrap up here. I absolutely will, Your Honors, and thank you. And my only point to all of that, and I know that was a question, I just wanted to show that if they want to say that Sergeant Bolton is bringing disrepute onto the department, that in fact there is so much more egregious conduct committed by so many other employees who were not subject to the same witch hunt that Sergeant Bolton was. Thank you all for your time. Thank you. Thank you very much. And the case is submitted. There being no further cases for argument, you may adjourn. Dishonorable Court is now adjourned. Dishonorable Court is adjourned. Dishonorable Court is adjourned. Dishonorable Court is adjourned.